Judge Roane.
Darmsdatt brought an action of assault and battery against Wolfe, in the Court of Hustings of the City of Richmond. The writ was returnable to the August term, 1801; issue was joined at the November term ; and the appellee with great difficulty avoided, being forced into a trial at that Court: at length, however, he got his cause continued.
The unusual rapidity of this movement, while, perhaps, it did not afford the appellee time to gain a knowledge of the prejudices existing in the City against him, prior to the cause being put to issue, comes in aid of one of the allegations of his bill, that even the bench of justice itself was not free from prejudice against him. The cause being thus at issue, and no mean left the appellee (to my knowledge) to remove the cause to another Court, or to change the venue by application to a Court of Law, he applied to the Court of Chancery for that purpose. He charged in his bill, and proved by testimony, that a torrent of prejudice existed against him in the City; that unusual pains had been taken to foster and encourage it; that strong prejudices existed against him, even on the part of some' of the Justices themselves, as manifested at the November *249 term, after the cause had been put to issue, and in partial-^ lar, from an unusual “ anxiety” being discovered in them to force him into a trial at that term; and that both from this temper in the Court, and from the prejudices existing among the people of the City, he could not have a fair trial, in the Court in which the cause was depending. As much of this ground of complaint (if not all of it) had only come to the knowledge of the appellee after the cause was put to issue, he would have been entirely without remedy, in respect of a change of venue, but for the interposition of a Court of Equity.
Nothing is more clear than that the powers of a Court of Equity are competent to this purpose, when the powers of the law tribunals are inadequate ; on the ground of that jurisdiction being assistant to the jurisdiction of Courts of Law;(a) and on the further ground that the interposition of a Court of Equity is necessary under such circumstances, to ensure a “ fair, impartial and satisfactory trial.”(b) It was particularly necessary that this interposition should be exercised, in default of the powers of the Courts of Law as aforesaid, especially “ in small jurisdictions,” where “ a cry has “ been raised, and the passions of the multitude inflamed,” or u where one of the parties is popular and the other a stran- “ ger, or obnoxious.”(c) The case thus put by the author of the Commentaries, is the very case at bar, as proved by the testimony, (to which I beg- leave to have very particular reference,) with this imperious circumstance to justify the interference of the Court of Equity in the present case, that the material facts, or some of them, rendering a change of the tribunal necessary to an impartial trial, only came to the knowledge of the appellee after the hands of the Courts of Law were tied up from granting relief in this particular, by the stage at which the proceedings in the cause had arrived. But for the interposition of the Court of Equity, the appellee would have been immolated 011 the altar of prejudice, and the trial would neither have been fair nor satisfactory.
Nothing in any of our statutes, respecting the grant of in-, junctions or certioraris by the Courts of Chancery, has any *250 relation to the case now under consideration. The power exercised by the Court of Chancery in this case is one of the main pillars of its jurisdiction, and is indispensable to the pure and fair administration of j ustice.
The Chancellor was therefore justified, not only by his undoubted jurisdiction in this case, but also by the facts proved in the cause, in arresting the proceedings in the Court of Hustings, and causing a trial to be had before a more Impartial tribunal. He went too far, indeed, in extending his interference to the indictment also; (which being a criminal proceeding, is beyond the cognisance of the Courts of Equity;)(a) but that proceeding is at an end, and is not now before us. When, therefore, he changed the venue by directing the trial to be had in the Richmond District Court, providing also, by consent of parties, that no citizen of Richmond should be upon the jury, he was strictly within his province, as he (in default of adequate power in the Courts of Law) thereby placed the pause in a channel to ensure a fair and impartial trial. The refusal of the District Court to try the issue, agreeably to the mandate of the Court of Chancery, cannot be justified on any ground more favourable to such Court than that of its entire ignorance of the just powers of the Courts of Equity in this particular; and as the particular ground of the proceeding in the Court of Chancery was entirely unknown to the District Court, (for, I presume only the order directing the trial of the issue was before it,) this refusal went the lull length of affirming that this power could not rightfully be exercised by the Court of Chancery, under any circumstances whatsoever ! not even under the strong and possible circumstances of the .whole bench of the Court of Hustings having declared, after issue was joined, and when, consequently, no possibility was left for the appellee to remove the cause except by application to the Court of Chancery, that the appellee should not receive justice at its hands !!
With the highest respect for all the tribunals of our country, it is- my duty, sitting in this place, to remark upon this unexampled procedure, as equally unwarranted by the lavy§ *251 of our country, and tending to sap the very foundations of justice : and, admitting that the order of the Court oi Chancery. was not justifiable so far as it related to the indictment, this formed no apology for the District Court for not proceeding to try the civil issue.
The Court of Hustings, emboldened by the example of the District Court, improved upon the contumacious conduct of the latter: for, while the latter only refused to execute an order of the Court of Chancery; the former made a positive inroad upon it: it proceeded to try the issue which .was both interdicted, as to that tribunal, by the order of the Court of Chancery, and translated to the forum of the District Court; and all this with a full knowledge of the existence of that order! The Court of Hustings, therefore, thus not only outraged all precedents on this subject, but also verified, perhaps, the allegation of the appellee, of its unfriendly disposition towards him : and, as his counsel actually withdrew from his defence, from a proper respect for the order of the Court of Chancery, which the Court and the adverse counsel were at that moment actually violating, and thus left the appellee wholly undefended; on this ground, also, the verdict in the Hustings Court ought not to bind him.
In this whole business the conduct of the appellee has been free from blame. While he submits to the damages and costs recovered against him in the District Court at the subsequent term, it is right that he should recover the costs' of both suits in Chancery. Those suits were imposed upon him in the first instance by the necessity of resorting to the Court of Chancery to ensure to him a fair trial, and after-wards by the errors or contumacy of the District Court and Court of Hustings¿ Admitting, therefore, that the appellant was himself personally free from blame also, his is but the. common case of being compellable to pay costs in consequence of the errors or mistakes of the inferior tribunals. The appellant has less reason to complain, in this respect,than the appellee had in the case of Cocke v. Pollock & Co.(a) who was condemned to pay the costs of an appeal to this *252 Court imposed upon him with the sole view of settling a general question of jurisdiction.
On these grounds I am of opinion to affirm the Decree now before us.
Judge Fleming.
The administration of justice (says Judge Blackstone, in his Commentaries, volume 3. page 383.) should not only be chaste, but should not even be suspected : and though in some respects, juries coming from the neighbourhood are advantageous, they are often liable to great objections : and after noticing some instances, he adds “ or '■'■■where a cry has been raised,, and the passions of the mulii- “ tude have been inf anted, or -where one of the parties ispopu- “ lar% and the other a stranger, or obnoxious, £s?c. the Courts “ of Law will therefore, in transitory actions, very often “ change the venue, or county where the case is to be tried/’
The very case now before us. There is abundant proof, from the affidavits of Moody, Harris, and Quarrier, that the cry was loud, and that strong prejudices prevailed against the appellee ; who, it seems, was not apprized of those circumstances, until after there was an issue in the cause, which was joined in a short time after its commencement; and it was then too late to apply to a superior Court of Law to remove the cause by a certiorari: his only mode of relief was by an application to a Court of Equity; which in my conception had ample jurisdiction to afford him a remedy. We are, told byfxxdgeBlackstone, that, mEngland, though the Courts of Law have no direct power to change the venue in local actions they sometimes do it indirectly and by mutual consent; yet to effect it directly and absolutely, the parties are driven to a Court of Equity; where, upon making out a proper case, it is done, upon the ground of being necessary to 2. fair ^ impartial, and satisfactory trial. And it is laid down, as a general principle, in Fonblanque, page 9. that equity stands for the whole of natural justice; is more excellent than any human institution; and that Courts of Equity are assistant to the jurisdiction of Courts of Law, by removing legal impediments *253 to the fair decision of a question depending in a Court of Lato. If, in England', then, a Court of Equity has the power of changing the venue in cases where the Courts of Law have no such direct power, upon the same principle may Courts of Equity exercise the same powers here, unless restrained by an express statute : and it appear, to me that there could not have been a more proper occasion for exercising the power, than the one now under consideration. I therefore, without minutely stating the circumstances of the case, which have been amply investigated by Judge Roane, who preceded me, concur in opinion that both decrees be afFJ&M F.B.

 1 Fonb. 10.

 3 Bl. 383

 Ibid.

 1 Fonb. 5.

 1 Hen. & Munf. 449.